IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

SHAYLYNN DEROCHE Individually and as as Wrongful Death Beneficiary and as survivor of WENDY CASPOLICH
Plaintiff,

v.

HANCOCK COUNTY MISSISSIPPI.; HANCOCK MEDICAL CENTER; and JOHN DOES 1-5,
Defendants.

CAUSE NO: 18-0136

FILED
MAY 17 2018
KAREN LADNER RUHR
CIRCUIT CLERK, HANCOCK CO.
BY _____ D.C.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, by and through her attorney, for her Complaint allege, upon knowledge as to herself and otherwise upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1. This is a civil action brought pursuant to 42 U.S.C § 1983 that seeks to remedy the unconstitutional deprivation of Plaintiff's statutory and constitutional rights. The conduct by Defendants, acting in concert with their officers, agents, servants, employees and attorneys, and all other persons in active concert or participation, violates Plaintiff's rights, privileges, and immunities under the United States Constitution, as amended, specifically numerous violations of the Fourth Amendment, Eighth Amendment and Fourteenth Amendment.

2. In short, the facts underlying this action represent a textbook case of municipal ignorance and indifference to a helpless individual that Hancock County was charged to safeguard and protect. Justice requires not only the imposition of monetary and punitive damages payable to

1



Plaintiff, but a declaration that the Hancock County Sheriff's Department and the County of Hancock, and the Hancock Medical Center are responsible for what happened to Ms. Caspolich.

3. The relief Plaintiff seeks is supported by satisfactory proofs, including the public records, facts and other documentation referenced throughout the Complaint.

4. Plaintiff seeks nominal, actual, compensatory and punitive damages against all Defendants for the flagrant, willful, knowing violation of Plaintiff's constitutionally protected rights and violations of federal statutes, as well as the costs of litigation, including reasonable attorney's fees.

5. With this as a background, Plaintiff, through counsel, does hereby complain and allege as follows:

## II.   JURISDICTION

6. This Court has concurrent jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3)(4), which confers jurisdiction to redress the deprivation of rights, privileges and immunities as stated herein.

7. This Court has jurisdiction over Plaintiff's state law claims because the acts and omissions of the Defendants, as complained of herein, occurred in Hancock, County Mississippi

## III.   VENUE

8. Venue is proper in this Court because a majority of the claims arise in Hancock County, Mississippi. Plaintiff's notice, pursuant to the Mississippi Tort Claims Act, is attached hereto as Exhibit A. More than 90 days have passed since the notice's service on the Defendants.

## IV.   IDENTIFICATION OF PARTIES

9. Plaintiff, Shaylynn DeRoche (sole heir and daughter) as Wrongful Death Beneficiary of Wendy Caspolich, is a resident citizen of Hancock County, Mississippi.

2

10. Defendant, HANCOCK COUNTY, MISSISSIPPI, hereinafter "County," is a political subdivision of the State of Mississippi, organized and existing pursuant to the laws of the State of Mississippi and, and charged with the oversight and the supervision of the Hancock County Sheriff's Department and jail. County may be served with process, pursuant to Mississippi law, upon the Chancery Clerk, Timothy Kellar, of Hancock County. Mr. Kellar can be served at the Hancock County Chancery Clerk Building, 152 Main Street, Suite A Bay St. Louis, MS 39520.

11. Defendant HANCOCK MEDICAL CENTER is a hospital organized under the laws of the State of Mississippi who may be served with process through its chief executive officer Alan Hodges at 140 Drink Water Blvd, Bay St. Louis, MS, 39520.

## V. FACTUAL ALLEGATIONS

12. Plaintiff's claims stem from the arrest, constitutional deprivations, failure to provide medical care, and wrongful death caused by the Hancock County Sheriff Department and the medical malpractice committed by the Hancock Medical Center.

### Hancock County

13. Prior to the incidents and unlawful actions complained of herein, Wendy Caspolich was the victim of medical mal practice which left her addicted to opioids and other pain medications.

14. On or about February 27, 2017 Ms. Caspolich (now deceased) was a passenger in a vehicle which was pulled over by Hancock County Deputies.

15. The vehicle contained narcotic drugs, and Ms. Caspolich attempted to hide the narcotics by placing them in her mouth and eventually swallowing them. Ms. Caspolich and the occupants of the vehicle were arrested for the misdemeanor crime of possession of paraphernalia.

16. Prior to, during, and after being booked into the Hancock County Jail, Ms. Caspolich and others informed the deputies that Ms. Caspolich had swallowed the narcotics and that she was in need of medical assistance.

17. No action was taken by county employees in response to Ms. Caspolich's request for medical assistance. In addition to the admission of Ms. Caspolich to swallowing the narcotics, she was in and out of consciousness during the booking process, as evidenced by her booking photograph and witnesses.

18. Ms. Caspolich's physical appearance, her condition, and her need for medical assistance is evident by her booking photograph. Ms. Caspolich was booked into the jail at or around 12:44 a.m. on February 27, 2017. It is currently unknown how long Ms. Caspolich was in custody prior to being booked into the jail.

19. Ms. Caspolich was placed into a holding cell, and her condition continued to deteriorate as she continued to pass in and out of consciousness. As Ms. Caspolich's condition was clearly dire, her cellmate began banging on the cell door asking the jail staff for medical assistance for Ms. Caspolich.

20. The cellmate was ignored by Hancock County staff charged with care and protection of those incarcerated.

21. Rather than coming to the aid of Ms. Caspolich, Jail staff demanded that the cellmate quit making so much noise and quit banging on the cell door.

22. When Jail staff finally responded, it was not a true attempt to assist. Although, Jail staff were unsuccessful in getting a blood pressure reading from Ms. Caspolich, no action was taken to provide proper medical intervention. Rather, Ms. Caspolich was left in the holding cell rapidly deteriorating.

23. Ms. Caspolich's cellmate continued banging on the door and begging the staff for medical assistance for Ms. Caspolich. Instead of providing Ms. Caspolich medical assistance, Jail staff moved Ms. Caspolich's cellmate to another holding cell. This action now left Ms. Caspolich all alone in her cell despite the fact that she was in obvious and dire need of medical assistance.

24. Upon information and belief, at approximately 2:24 a.m. on February 27, 2017, Ms. Caspolich was released from the jail for "medical reasons." Ms. Caspolich's detention and release was approved by the Sheriff.

25. Hancock County employees allegedly transported Ms. Caspolich to the hospital where she was later pronounced dead from an apparent drug overdose later that day. The County's failure to take appropriate and reasonable steps to provide medical assistance for Ms. Caspolich was a direct and proximate cause of Ms. Caspolich's death.

26. The actions and omissions of the County evidence a reckless and willful disregard for Ms. Caspolich's rights, and a violation of Ms. Caspolich's clearly established constitutional rights.

Hancock Medical Center

27. Based upon the facts known to Ms. Caspolich's beneficiaries at this time, Ms. Caspolich died from a drug overdose while in the care of the Hancock Medical Center. According to reports from the County, Ms. Caspolich may have walked into the hospital under her own power and without assistance from Hancock County employees.

28. It is assumed that county employees told the medical providers at Hancock Medical Center that Ms. Caspolich had ingested narcotics. Hancock Medical Center doctor's and employees knew, or should have known, that Ms. Caspolich had ingested narcotics and that Ms. Caspolich had experienced a drug overdose.

5

29. Hancock Medical Center failed to take appropriate and reasonable steps and measures to monitor, diagnose and treat Ms. Caspolich for the known drug overdose, resulting in Ms. Caspolich's death.

30. Had Hancock Medical Center doctors and employees taken reasonable and appropriate steps to monitor, diagnose and treat Ms. Caspolich for the drug overdose, the drug overdose and the symptoms therefrom could have been reversed and Ms. Caspolich would not have died in the care of the Hancock Medical Center.

31. It should be noted that Hancock Medical Center has refused to relinquish Ms. Caspolich's medical records to her daughter as of the date of this Notice. Therefore, she is reciting the facts which are known to her at this time gathered from other public records, newspaper articles, and other investigation.

32. Counsels for the Plaintiff has complied with the requirements of Miss. Code Ann. § 11-1-58 with the records available. Counsel certifies that an expert has been consulted based upon the records available.

ALLEGATIONS OF LAW

33. The Plaintiff is the sole wrongful death beneficiary of Wendy Caspolich, being her only child at the time of her death. Plaintiff is entitled to bring this action pursuant to Miss. Code Ann. § 11-7-13.

34. In addition to all claims made pursuant to Miss. Code Ann. § 11-7-13, Plaintiff DeRoche does hereby assert claims against the Defendants for negligence, gross negligence, infliction of emotional distress, negligence *per se*, loss of society and companionship of Plaintiff's mother and punitive damages.

35. All acts of County were conducted under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages and/or statutes of the United States Government, the State of Mississippi, and the County of Hancock.

36. Sheriff Ricky Adam was a final policy maker, capable of ratification for County.

37. It is the policy, practice or custom of the County to violate the procedural and substantive due process rights of those citizens under their jurisdiction.

38. It is the policy, practice or custom of all Defendants to conspire to interfere with the civil rights of its citizens.

39. It is the policy, practice or custom of the County to engage in actions that are fundamentally unfair to its citizens.

40. It is the policy, practice or custom of the County to deprive individuals of medical treatment while incarcerated.

41. Defendants failed to train and/or supervisor their subordinates to prevent the actions described herein.

42. At the time Ms. Caspolich was seized by the County, she did not have the freedom to leave.

43. Defendants' actions, as alleged herein, were made in bad faith.

44. Defendants, by and through their actions and under the color of law, violated Plaintiff's constitutionally protected rights.

45. Defendants' actions, as alleged herein, were made with actual malice and/or constituted willful misconduct.

46. At all times relevant, the Plaintiff's constitutional rights, as alleged herein, were violated.

47. At all times relevant, the Plaintiff's constitutional rights, as alleged herein, were clearly established.

48. The customs, policies, and/or actual practices that allowed the unconstitutional incarceration and wrongful death of Ms. Caspolich, described herein, were necessarily consciously approved by Defendants.

49. It was the custom, practice and policy of the Defendants and its officers, to engage in the misconduct described herein.

50. Plaintiff has suffered injury to her constitutional and statutory rights.

51. Alternatively, because liability in effect for issues of this kind, and because it is the intent of the Mississippi Legislature that the Defendants pay any claims for violation of a citizen's rights in damages under Mississippi Law, the doctrine of *Monell v. Department of Social Services*, 475 U.S. 235 (U.S. 1986), should not apply to this cause, and the Defendants should be held vicariously liable for its officials causing the civil liberty violations of Plaintiff's rights.

### FIRST CAUSE OF ACTION – 42 U.S.C. § 1983
### Violation of Constitutional Rights Under Color of State Law
### – Infliction of Cruel and Unusual Punishment/Deliberate Indifference to Serious Medical Needs –

52. All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

53. The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to a detainee with serious medical needs, as such conduct would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

54. The actions of the County detailed above violated Wendy Caspolich's rights under the United States Constitution. In short, it was not objectively reasonable for the County to

ignore Ms. Caspolich's serious medical problems and refuse to provide Ms. Caspolich with appropriate, necessary medical treatment. In fact, the County's actions demonstrated a deliberate indifference to Ms. Caspolich's serious medical needs. The actions of the Defendants are motivated by malice and/or are grossly negligent.

55. This conduct on the part of Defendant also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

56. Defendant Hancock County is, and its senior policy makers at the Hancock County Sheriff's Department are, directly responsible for this constitutional violation. Upon information and belief, Hancock County, through either express policy or the inactions of its policy makers, had a policy and/or practice of not providing adequate medical care to its detainees. This policy or practice is best demonstrated by the use of a "medical officer," e.g., an untrained Corrections Officer, at the Hancock County Jail to perform "evaluations" of detainees in lieu of a trained physician.

57. The Plaintiff also claims that Defendants are responsible for Ms. Caspolich's death by virtue of their failure to train and supervise their subordinates at the Hancock County Jail.

58. In addition to damages to be paid under Mississippi law, Plaintiff requests the imposition of damages under federal law for his loss of life.

59. As a direct and proximate result of the unconstitutional acts described above, the decedent has been irreparably injured, in that she is dead because of the Defendants' actions.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below.

**SECOND CAUSE OF ACTION – 42 U.S.C. § 1983**
**Violation of Constitutional Rights Under Color of State Law**
**-- Violation of Right to Due Process of Law --**

60. All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

61. Plaintiff Shaynn DeRochel lived with her mother for several years and was her friend and companion. Ms. DeRochel had a property and liberty interest in her relationship with her mother.

62. The Due Process Clause of the U.S. Constitution guarantees that one's property and liberty cannot be taken away without due process of law. The Defendants, by killing Wendy Caspolich, deprived Plaintiff DeRoche of her relationship with her mother, and consequently violated her due process rights.

63. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

64. The actions of the Defendants are motivated by malice and/or are grossly negligent. Defendant Hancock County is, and its senior policy makers at the Hancock County Sheriff's Department, are directly responsible for this constitutional violation.

65. Upon information and belief, Hancock County, through either express policy or the inactions of its policy makers, had a policy and/or practice of not providing adequate medical care to its detainees. As a direct and proximate result of the unconstitutional acts described above, Plaintiff DeRoche has been irreparably injured.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below.

### THIRD CAUSE OF ACTION – 42 U.S.C. § 1983
### Violation of State Law
### -- Wrongful Death --

66. All prior paragraphs of the Complaint are incorporated herein by reference, the same as though pleaded in full.

67. The negligent acts of all Defendants detailed above caused the wrongful death of Wendy Caspolich.

68. As a direct and proximate result of the unlawful and unconstitutional acts described above, the decedent has been irreparably injured, in that she is dead because of the Defendants' actions.

69. Plaintiff forwarded Defendants the attached Mississippi Tort Claim Notice, and more than 90 days have passed. Exhibit A, MTCA Notice.

WHEREFORE Plaintiff prays for relief against all Defendants as set forth below

## DEMAND FOR PUNITIVE DAMAGES

70. All prior paragraphs of the Complaint are incorporated herein by reference, the same as though plead in full.

71. The actions and inactions of the Defendants described above were extreme and outrageous (or grossly negligent), and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants.

72. To the extent that punitive damages are available against Defendants under state law, the Plaintiff seeks such damages relative to the third cause of action for wrongful death.

WHEREFORE, Plaintiff prays for relief against all Defendants as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court:

a. Assume jurisdiction over this action;

b. Declare that Defendants' actions, as herein described, violated Plaintiff's constitutional rights under the Fourth, Eighth and Fourteenth Amendment to the United States Constitution;

c. Appropriate equitable relief including, but not limited to prospective injunctive relief, declaratory and other injunctive remedies;

d. Award Plaintiff nominal and actual damages for Defendants' violation of their constitutional and statutory rights;

e. Award Plaintiff compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, loss of reputation, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

f. Punitive damages for all claims allowed by law in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Award Plaintiff her costs of litigation, including reasonable attorney's fees and expenses, pursuant to 42 U.S.C. sec. 1988/1983 and/or 20 U.S.C. sec. 1400 et seq., and

i. Grant such other relief to which Plaintiff may be entitled or as this Court deems necessary and proper.

Respectfully submitted, this the 16+2 day of ~~April~~ May, 2018.

Daniel M. Waide, Esq.

Daniel M Waide, MS Bar #103543
1300 Hardy St.
PO Box 17738
Hattiesburg, MS 39404
601-582-4553 (Office)
601-582-4556 (Fax)
dwaide@jhrlaw.net

12

## THIS IS A LEGAL NOTICE. IMMEDIATE ACTION MAY BE REQUIRED TO PROTECT YOUR RIGHTS

January 19, 2018

To: Hancock County
c/o Chancery Clerk
854 Hwy 90
Bay St. Louis, MS 39520

Hancock County Sheriff's Department
c/o Ricky Adam
8450 Hwy 90
Bay St. Louis, MS 39520

Hancock Medical Center
c/o CEO Alan Hodges
140 Drink Water Blvd
Bay St. Louis, MS 39520

Claimant: Shaylynn DeRoche (sole heir and daughter) as Wrongful Death Beneficiary and on behalf of the estate of Wendy Caspolich
Hancock County, Mississippi
7052 Road 132
Bay St. Louis, MS 39520

Re: Notice of Claim Pursuant to Mississippi Tort Claims Act (MISS. CODE ANN. § 11-46-11)

Dear Sir/Madam:

This letter is a formal notice of a claim against you, a governmental entity for which you are the chief executive officer or named in your individual capacity as a representative of said agency (hereinafter, "Defendants"). This claim is governed by the Mississippi Tort Claims Act (MISS. CODE ANN. § 11-46-11). As required by The Act, this letter hereby serves to provide sufficient notice to you and your representatives, officials and/or agents of a pending claim which may form the basis of a lawsuit. The Mississippi Tort Claims Act requires that the claimant send a Notice of Claim to the governmental entity at least ninety (90) days before initiating any such lawsuit. This letter satisfies that requirement and begins the ninety-day waiting period for the filing of such a lawsuit.

You are hereby directed to preserve any and all audio and video recordings, as well as all other evidence and documents regarding the incidents complained of herein.



EXHIBIT A

## NOTICE TO PRESERVE EVIDENCE

<u>You are hereby directed to preserve any and all audio and video recordings, as well as all other evidence and documents regarding the incidents complained of herein. Including, but not limited to, audio recordings of all meetings.</u>

A.   Narrative of damages.

This claim is for wrongful death, economic damages, personal injuries, emotional distress, constitutional deprivations and other potential losses and damages suffered by Wendy Caspolich and brought by her beneficiary and sole heir Shaylynn DeRoche.

On or about February 27, 2017 Wendy Caspolich was a passenger in a vehicle which was pulled over by Hancock County Deputies. The vehicle contained narcotic drugs, and Ms. Caspolich attempted to hide the narcotics by placing them in her mouth and eventually swallowing them. Ms. Caspolich and the occupants of the vehicle were arrested for the misdemeanor crime of possession of paraphernalia. Prior to, during, and after being booked into the Hancock County Jail, Ms. Caspolich informed the deputies that she had swallowed the narcotics and that she was in need of medical assistance. No action was taken by county employees in response to Ms. Caspolich's request for medical assistance. In addition to the admission of Ms. Caspolich to swallowing the narcotics, she was in and out of consciousness during the booking process. Ms. Caspolich's physical appearance, her condition, and her need for medical assistance is evident by her booking photograph. Ms. Caspolich was booked into the jail at or around 12:44 a.m. on February 27, 2017. It is currently unknown how long Ms. Caspolich was in custody prior to being booked into the jail.

Ms. Caspolich was placed into a holding cell, and her condition continued to deteriorate as she continued to pass in and out of consciousness. As Ms. Caspolich's condition was clearly dire, her cellmate began banging on the cell door asking the jail staff for medical assistance for Ms. Caspolich. The cellmate was virtually ignored. Rather than coming to the aid of Ms. Caspolich, Jail staff demanded that the cellmate quit making so much noise and to quit banging on the cell door. When Jail staff finally responded, it was not a true attempt to assist. Although, Jail staff were unsuccessful in getting a blood pressure reading from Ms. Caspolich, no action was taken to provide proper medical intervention. Rather, Ms. Caspolich was left in the holding cell rapidly deteriorating. Ms. Caspolich's cellmate continued banging on the door and begging the staff for medical assistance for Ms. Caspolich. Instead of providing Ms. Caspolich medical assistance, Jail staff moved Ms. Caspolich's cellmate to another holding cell. This action now left Ms. Caspolich all alone in her cell despite the fact that she was in obvious and dire need of medical assistance.

Upon information and belief, at approximately 2:24 a.m. on February 27, 2017, Ms. Caspolich was released from the jail for "medical reasons." Ms. Caspolich's detention and release

was approved by the Sheriff. Hancock County employees allegedly transported Ms. Caspolich to the hospital where she was pronounced dead from an apparent drug overdose later that day. The County's failure to take appropriate and reasonable steps to provide medical assistance for Ms. Caspolich was a direct and proximate cause of Ms. Caspolich's death. The actions and omissions of the County evidence a reckless and willful disregard for Ms. Caspolich's rights, and a violation of Ms. Caspolich's clearly established constitutional rights.

### Hancock Medical Center

Based upon the facts known to Ms. Caspolich's beneficiaries at this time, Ms. Caspolich died from a drug overdose while in the care of the Hancock Medical Center. According to reports, Ms. Caspolich may have walked into the hospital under her own power and without assistance from Hancock County employees. It is assumed that county employees told the medical providers at Hancock Medical Center that Ms. Caspolich had ingested narcotics. Hancock Medical Center doctor's and employees knew, or should have known, that Ms. Caspolich had ingested narcotics and that Ms. Caspolich had experienced a drug overdose. Hancock Medical Center failed to take appropriate and reasonable steps and measures to monitor, diagnose and treat Ms. Caspolich for the known drug overdose, resulting in Ms. Caspolich's death. Had Hancock Medical Center doctors and employees taken reasonable and appropriate steps to monitor, diagnose and treat Ms. Caspolich for the drug overdose, the drug overdose and the symptoms therefrom could have been reversed and Ms. Caspolich would not have died in the care of the Hancock Medical Center.

It should be noted that Hancock Medical Center has refused to relinquish Ms. Caspolich's medical records to her daughter as of the date of this Notice. Therefore, she is reciting the facts which are known to her at this time gathered from other public records, newspaper articles, and other investigation.

**B. Extent of damages and/or injuries.**

The damages caused by the aforementioned incident(s) can be summarized as follows:

Ms. Caspolich suffered severe emotional distress, anxiety, stress, pain/suffering, and loss of enjoyment of life as a result of Defendants' actions. In addition, Ms. Caspolich has lost wages and earning capacity due to her untimely and wrongful death caused by the Defendants. Ms. Caspolich's beneficiary asserts all damages and claims available to her under Mississippi's wrongful death statute, including negligence, gross negligence, reckless disregard, failure to retain/supervise, conspiracy, outrage, negligent supervision, negligent maintenance, infliction of emotional distress, malfeasance, loss of community, medical malpractice, loss of consortium and negligent training. Claimants further assert all survival claims and damages available under Mississippi and federal law for Defendants' wrongful actions, as complained of herein.

Based upon the facts known at this time, Claimant will also seek to file claims pursuant to federal and constitutional law violations. Claimant reserves the right to immediately file said claims under federal law. Investigation is ongoing, and Claimant reserves the right to revise and supplement the claims made herein.

C.      Time and place of damages and/or injuries.

The incident which forms the basis of this claim occurred in February of 2017 in Hancock County, Mississippi.

D.      Names of all persons known to be involved.

The following is a list of all persons known to be involved with this claim, including any and all persons involved at the time of the damages and/or injuries, as well as all persons involved in any communications or discussions resulting from the claim:

1. Currently unknown county employees and hospital staff.
2. Shaylynn DeRoche
3. Elizabeth Hoffman
4. Brandon Allen
5. Samantha Parker
6. Desiree Martinez (Ms. Caspolich's cellmate)
7. Martin Kowalski
8. Deputy Crowe
9. Deputy Jones
10. Ricky Adams
11. Don Bass
12. Mark Moran
13. Mandy Caspolich
14. Other unknown witnesses

E.      Amount of money damages sought in this claim.

As a result of the damages and personal injuries suffered by the claimant, Claimant is seeking Five Million, Five Hundred Thousand Dollars ($5,500,000) in monetary damages.

F.      Residency of the claimant(s) at the time of the damages and/or injuries and at the time of the Notice of Claim.

At the time of the damages and injuries which serve as the basis for this claim claimant was a resident of Hancock County, Mississippi. At the time of the service of this Notice of Claim, the claimant is a resident of Hancock County, Mississippi.

This Notice of Claim is in compliance with all requirements of Miss. CODE ANN. § 11-46-11 and subsequent interpretations of that law by the courts of Mississippi. Beginning ninety (90) days following the receipt of this Notice of Claim, the claimant may file a complaint in the court of competent jurisdiction seeking remedies for this claim.

Signed,

_____
Daniel M. Waide, Attorney for Claimant(s)

Daniel M. Waide, (MSB#103543) Johnson,
Ratliff & Waide, PLLC
1300 HARDY ST.
PO BOX 17738
HATTIESBURG, MS 39404
601-582-4553 (OFFICE) 601-582-4556
(FAX) dwaide@jhrlaw.net