IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAYLYNN DEROCHE,<br>**Individually and as Wrongful**<br>**Death Beneficiary and Survivor**<br>**of Wendy Caspolich** | | PLAINTIFF |
| v. | | CAUSE NO. 1:18cv215-LG-RPM |
| HANCOCK COUNTY, MS;<br>JORDAN LEE; PATRICK<br>CROWE; LALAYNNIA<br>DEPERALTA; SHERIFF RICKY<br>ADAMS; and JOHN DOES 1-5 | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the [49] Motion for Summary Judgment filed by the following defendants: Jordan Lee, Patrick Crowe, Lalaynnia Deperalta, and Sheriff Ricky Adam.[1] Each of these defendants argue they are entitled to qualified immunity as to Shaylynn Deroche's Section 1983 claims. The parties have fully briefed the Motion. The Court conducted a hearing on the Motion on March 31, 2021, where the parties presented oral argument. At the hearing, the Court took the Motion under advisement and granted the parties sixty days to conduct depositions of witnesses and present supplemental briefs. Deroche noticed the deposition of one of her witnesses, Brandon Allen, for April 19, 2021, but counsel for the defendants has represented to the Court that Allen did not appear for his

---

[1] Sheriff Adam's last name is misspelled in the [29] Amended Complaint. The Clerk of Court is directed to correct the spelling of Sheriff Adam's name on the docket.

deposition. The parties elected not to provide supplemental briefs to the Court by the deadline imposed during the hearing. As a result, the Motion is now ripe for consideration. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Officers Lee, Crowe, and Deperalta are entitled to summary judgment based on qualified immunity. Sheriff Adam's Motion seeking qualified immunity is denied as moot because Deroche has clarified that she is only suing Sheriff Adam in his official capacity.[2]

## BACKGROUND

On February 26, 2017, Officer Patrick Crowe of the Hancock County Sheriff's Department conducted a traffic stop of a vehicle in which Wendy Caspolich was a passenger. (Def.'s Mot. Ex. A, ECF No. 49-1). Officer Crowe arrested Caspolich for possession of controlled substance paraphernalia. (*Id.*) He also arrested her fellow passenger, Brandon Scott Allen, Sr., for possession of paraphernalia and for providing false information to officers. (*Id.*) Caspolich and Allen were taken to the Hancock County Public Safety Complex for booking. (*Id.*) At the jail, Corrections Officer Jordan Lee conducted a strip search of Caspolich and discovered a small amount of drugs. (Def.'s Mot. Ex. D, at 29-30). Officer Lee asked Caspolich whether she had swallowed any drugs, and Caspolich said she had not. (*Id.* at 27). Officer Lee then placed Caspolich in a holding cell. (*Id.*) Officer Lee testified that

---

[2] As the Fifth Circuit has recently explained, "Municipalities and public officials in their official capacity do not enjoy qualified immunity against § 1983 actions—only officials in their individual capacities may assert qualified immunity." *Johnson v. Bowe*, No. 19-40615, 2021 WL 1373959, at *3 (5th Cir. Apr. 12, 2021) (citing *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 406 (5th Cir. 2007)).

Caspolich was irate, irritated, and exasperated during this process, but Officer Lee saw no signs that Caspolich was under the influence of any drugs. (*Id.* at 20-22).

Officer Lee testified that, about twenty to thirty minutes after Caspolich's arrival at the jail, Caspolich's cell mate, Desire Martinez, reported that Caspolich had swallowed drugs. (*Id.* at 19, 28). Officer Lee testified that she immediately removed Caspolich from the holding cell and notified her supervisor, Lalaynnia "Hanna" Deperalta. (*Id.* at 28).

Officer Deperalta testified that she first had contact with Caspolich when Officer Lee pulled Caspolich from the holding cell. (Def.'s Mot. Ex. E, at 7, ECF No. 49-5). Officer Deperalta testified that Caspolich denied ingesting any drugs. (*Id.*) No medical personnel were present at the jail at night, but a medical provider was available via phone. (*Id.* at 8, 12). Officer Deperalta called the medical provider and was instructed to check Caspolich's pulse and blood pressure. (*Id.* at 8). It was decided that Caspolich should be taken to the hospital. (*Id.* at 10-11). The Warden contacted Sheriff Adam via telephone, and Sheriff Adam approved Caspolich's release. (*Id.*) Officer Lee simultaneously booked Caspolich into and out of the jail. (Def.'s Mot. Ex. D, at 18). Caspolich was at the jail for about one hour, and she was released and taken to Hancock Medical Center at 12:40 or 12:45 a.m. (*Id.* at 25).

Medical records reflect that Caspolich was seen at the emergency room at 1:15 a.m. on February 27, 2017. (Def.'s Mot. Ex. F, ECF No. 49-6). Caspolich was admitted to the intensive care unit and treated for suspected ingestion of seven

grams of methamphetamine. (*Id.*) Caspolich suffered respiratory failure and passed away on the morning of February 28, 2017. (*Id.*)

Caspolich's daughter, Shaylynn Deroche, filed this Section 1983 lawsuit against Hancock County, Officer Lee, Officer Crowe, Officer Deperalta, and Sheriff Adam. She alleged that the defendants violated Caspolich's Constitutional rights by inflicting cruel and unusual punishment, exhibiting deliberate indifference to serious medical needs, and violating Caspolich's right to due process. She further claimed that Sheriff Adam failed to staff the jail with medical personnel and failed to properly train officers who worked at the jail. She also filed a state law wrongful death claim against all the defendants.

The individual defendants have filed the present Motion for Summary Judgment seeking qualified immunity. Although these defendants ask the Court to dismiss all the claims Deroche filed against them, their Motion does not address Deroche's state law wrongful death claims. At the hearing that the Court conducted on the defendants' Motion, counsel for Deroche clarified that Deroche was not pursuing any individual capacity claims against Sheriff Adam; therefore, the present motion must be denied to the extent that Sheriff Adam seeks qualified immunity. Deroche's attorney has also conceded that Deroche has no evidence that any delay in medical treatment caused Caspolich's death because he has not yet obtained a copy of Caspolich's autopsy report.[3]

---

[3] Since Deroche did not file a supplemental brief as requested by the Court at the hearing held in this matter, questions remain as to whether she intends to pursue any claims against Officers Lee, Crowe, and Deperalta in their official capacities.

**DISCUSSION**

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**I. ADMISSIBILITY OF TESTIMONY SUBMITTED BY DEROCHE**

Before the Court can analyze whether Officers Lee, Crowe, and Deperalta (hereafter collectively referred to as "the Officers") are entitled to qualified immunity, it must first determine whether it can consider evidence and testimony relied upon by Deroche in her response in opposition to the Officers' Motion.

---

Nevertheless, it is not necessary for the Court to address any official capacity claims because the present Motion only concerns qualified immunity.

Deroche has submitted a declaration from Brandon Allen, who was arrested and taken to the jail for booking at the same time as Caspolich. Allen has given the following testimony in his declaration:

> 1. I, Brandon Allen, am an adult resident of the State of Mississippi, over the age of 18, and competent to make this declaration.
>
> 2. I was taken into custody along with Wendy Caspolich on February 26, 2017, by Hancock County.
>
> 3. Wendy informed officers in the jail that she ingested 7 grams of meth.
>
> 4. When we got to the jail, I asked Wendy if she was ok, and Desire told me that Wendy was unable to throw up the drugs that she had swallowed.
>
> 5. Desire Martinez was in the cell with Wendy.
>
> 6. I was in the cell across the corner from Wendy and could talk to Wendy.
>
> 7. I yelled at the officers in the jail and told them that Wendy needed help because she had swallowed drugs.
>
> 8. Desire repeatedly beat on the door of the cell and was telling officers that Wendy was not ok.
>
> 9. Officers responded by telling Desire that Wendy was fine and going to be ok.
>
> 10. The officers did nothing to check on Wendy.
>
> 11. Officers in the jail did not show any concern for Wendy and failed to administer any medical treatment to Wendy.
>
> 12. All of the jailers in the booking area could hear me.
>
> 13. Officers in the booking area told Desire while she was screaming to "let this be a lesson learned."
>
> 14. No officer corrected or scolded the officer for those comments.

> 15. I was moved around the corner, but I could still hear Wendy.
>
> 16. The girls were yelling and screaming for help, but the officers ignored them.
>
> 17. I have been back to the jail since with my girlfriend. The jailers told my new girlfriend that she needed to be careful because the last girl I was with ended up dead.

(Pl.'s Resp. Ex. B, ECF No. 51-2).

Deroche has also submitted statements that were made by an individual claiming to be Desire Martinez to Deroche's attorney via Facebook messenger. (Pls.' Resp. Ex. C, ECF No. 51-3). According to these statements, Caspolich told Martinez that she had eaten a quarter ounce of drugs, but Caspolich told Martinez not to tell anyone. Martinez told Caspolich that if she did not say something, Caspolich would die. Martinez claims that she notified "the duties officer as well as the arresting officer and they took there [sic] time." (Pl.'s Resp. Ex. C, ECF No. 51-3). Martinez states that the officers yelled at her and told her to "hush." (*Id.*) The Officers said that Caspolich would be charged with felony destruction of evidence. (*Id.*) When Martinez continued to beat on the door and yell that Caspolich was dying, the Officers screamed at Martinez, removed Martinez from the cell, and placed Martinez in a different cell. (*Id.*)

The Officers argue that the Court cannot consider Allen's declaration and the unsworn statements allegedly given by Martinez because the statements are inadmissible hearsay. The defendants also claim that some of Allen's statements

are inadmissible because it is unclear whether the statements are based on personal knowledge.

Courts can consider evidence on summary judgment if the evidence "can be reduced to an admissible form at trial." *Matter of Ala. & Dunlavy, Ltd.*, 983 F.3d 766, 774 (5th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(2); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017)). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated." Fed. R. Civ. P. 56(c)(4)); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Unsworn testimony is admissible if it is in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746.

"Hearsay," is defined as an out-of-court statement offered in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Therefore, "[a] statement does not fall under the hearsay rule if it was offered, not to prove the truth of the matter asserted, but to prove that the statement was made." *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988); *see also* Fed.

R. Evid. 801(c) advisory committee's note to 1972 amendment ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). "Testimony offered to prove that the party had knowledge or notice is not hearsay because 'the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay.'" *In re Morrison*, 555 F.3d 473, 483 (5th Cir. 2009). Likewise, a declarant-witness's prior consistent statement is not hearsay if

> [t]he declarant testifies and is subject to cross-examination about a prior statement," and the prior statement is offered for one of two reasons: "(i) to rebut an express or implied charge that the declarant recently fabricated [his testimony] or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

*See United States v. Portillo*, 969 F.3d 144, 173 (5th Cir. 2020) (quoting Fed. R. Evid. 801(d)(1)(B)).

Martinez's unsigned, unsworn statements cannot be considered at the summary judgment stage because her statements do not satisfy the requirements of Fed. R. Civ. P. 56(c)(4) or 28 U.S.C. § 1746. Deroche argues that Martinez's statements could potentially be used as impeachment evidence at trial, but impeachment evidence is not competent evidence for summary judgment. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (citing *United States v. Glassman*, 562 F.2d 954, 958 (5th Cir. 1977)).

The statements made by Allen in paragraphs 3, 8, 9, 10, 11, 13, 14, and 16, are inadmissible because it is unclear whether these statements are based on Allen's personal knowledge or whether he was told this information by either

-9-

Martinez or some other person. *See* Fed. R. Civ. P. 56(c)(4)); Fed. R. Evid. 602. The declaration is vague as to what Allen actually heard and saw the Officers, Martinez, and Caspolich say and do at the jail. His statement in paragraph 12 that "[a]ll of the jailers in the booking area could hear [him]" is clearly speculative and inadmissible. Furthermore, Allen's statement in paragraph 7 — that Allen yelled at the officers in the jail and told them that Caspolich needed help because she had swallowed drugs — will only be admissible if Allen testifies at trial and the requirements of Fed. R. Evid. 801(d)(1)(B) are satisfied. *See Portillo*, 969 F.3d at 173. It is not necessary to address the remaining statements in Allen's declaration because they have no bearing on the Officers' motion.

## II. MEDICAL CARE

In her First Amended Complaint, Deroche claims that each of the defendants violated Caspolich's Constitutional rights by denying her medical care. The Officers argue that they are entitled to qualified immunity as to these claims.

A person may assert a § 1983 claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates that person's rights under the Constitution. 42 U.S.C. § 1983. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing

precedent placed the statutory or constitutional question beyond debate." *Id.* (citations and quotation marks omitted). "[A] plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* Courts are permitted to "analyze the prongs in either order or resolve the case on a single prong." *Cunningham*, 983 F.3d at 191.

As the Fifth Circuit has explained, pretrial detainees like Caspolich and convicted prisoners "look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). The Eighth Amendment prohibition of cruel and unusual punishment applies to convicted prisoners, while "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* "Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

A government official violates a pretrial detainee's Fourteenth Amendment right to medical care when the official acts with deliberate indifference to the detainee's serious medical needs. *Estate of Bonilla by & through Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 305 (5th Cir. 2020). To meet the extremely high standard for proving deliberate indifference, the plaintiff "must show that the officers were

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the officers actually drew the inference, and that the officers disregarded that risk by failing to take reasonable measures to abate it. *Id.* (internal quotation marks and alterations omitted). A plaintiff can demonstrate deliberate indifference by showing that an officer "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019). Negligent conduct does not satisfy the deliberate indifference standard. *Hyatt v. Thomas*, 843 F.3d 172, 178 (5th Cir. 2016).

"A delay in medical care violates the Constitution 'if there has been deliberate indifference [that] results in substantial harm.'" *Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (quoting *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). However, Deroche argues that she is not required to prove substantial harm because she is alleging denial of medical care, not delay. Although Deroche claims that Caspolich received no medical care at the jail, the Officers provided Caspolich with medical care by taking her to the hospital. Therefore, Deroche must demonstrate that the Officers' delay in taking Caspolich to the hospital caused Caspolich substantial harm.

First, Deroche has not provided any evidence or testimony that any individual defendant was aware that there was a substantial risk of serious harm to Caspolich prior to the time when they began preparations to take her to the

-12-

hospital. Allen's testimony, assuming that it is admissible, does not specify which of the Officers, if any, were informed that Caspolich had swallowed drugs or when these Officers were informed that she had swallowed drugs. When reviewing claims filed against officers in their individual capacities, courts must consider each defendant's actions individually. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). For this reason, generalized testimony addressing the Officers as a group cannot create a genuine issue of material fact. Furthermore, while Allen claims that he and Martinez were yelling for help, he can only speculate as to whether any of the Officers may have heard them. Therefore, Allen's testimony does not tend to show that any of the Officers acted with deliberate indifference.

Deroche also claims that Caspolich's booking photo shows that the Officers acted with deliberate indifference. While the booking photo could be viewed as evidence that Caspolich was intoxicated, it is unclear whether the photo was taken when Caspolich first arrived at the jail or while Caspolich was simultaneously booked into and out of the jail immediately before she was taken to the hospital. Surveillance video taken at the jail reveals that Caspolich was walking without assistance or difficulty upon arriving at the jail and she was able to remove her jewelry without help. Caspolich exhibited no signs of distress on the video until after she was removed from the holding cell so that she could be taken to the hospital. At that point, Caspolich was still able to walk with little to no assistance and she was able to talk and drink water, but she was fanning herself and appeared

uncomfortable or angry. No additional information can be gleaned from the video since there is no audio.

Even if Deroche had produced evidence that the Officers had knowledge that Caspolich was seriously ill before they began preparations to take her to the hospital, Deroche has not presented any evidence or expert testimony that the Officers' alleged delay in taking Caspolich to the hospital caused Caspolich substantial harm. For example, there is no evidence that Caspolich would have survived if she had been taken to the hospital earlier. As a result, the Officers are entitled to qualified immunity and summary judgment as to Deroche's claims for denial of medical care or delay in providing medical care.

## CONCLUSION

For the foregoing reasons, Officers Jordan Lee, Patrick Crowe, and Lalaynnia Deperalta are entitled to qualified immunity and summary judgment as to Deroche's Section 1983 individual capacity claims. Sheriff Adam's request for qualified immunity is denied because Deroche has clarified that she is only suing him in his official capacity. All other claims shall remain pending.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [49] Motion for Summary Judgment is **GRANTED** as to the plaintiff's Section 1983 claims filed against Officers Jordan Lee, Patrick Crowe and Lalaynnia Deperalta in their individual capacities and **DENIED AS MOOT** as to Sheriff Adam. The plaintiff's Section 1983 claims against Officers Lee, Crowe, and Deperalta in their individual

capacities are hereby **DISMISSED WITH PREJUDICE**. All other claims shall remain pending.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Clerk of Court is directed to correct the spelling of Sheriff Ricky Adam's last name on the docket.

**SO ORDERED AND ADJUDGED** this the 22nd day of June, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE